1

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

2
Jahmy S. Graham (SBN 300880)
jahmy.graham@nelsonmullins.com

3
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502

4
Telephone:   424.221.7400
Facsimile:   424.221.7499

5

6
Attorneys for Defendants
MCDONALD'S CORPORATION
MCDONALD'S USA, LLC

7

8
UNITED STATES DISTRICT COURT

9
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

10

11
AMBER MEYERS, an individual; JOHN MICHAEL TAFERNER, an individual; NASIM

12
SHARIATPANAHI, an individual; and ROES 1-50, on behalf of

13
themselves and all others similarly situated,

14

15
Plaintiffs,

16
vs.

17
MCDONALD'S CORPORATION, a Delaware corporation;

18
MCDONALD'S USA, LLC, a Delaware limited liability company;

19
and DOES 1-10,

20
Defendants.

21

22

23

24

25

26

27

28

Case No. 5:23-CV-2589-JGB-SP

Honorable Jesus G. Bernal

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MCDONALD'S CORPORATION AND MCDONALD'S USA, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date:   April 22, 2024
Time:   9:00 a.m.
Ctrm:   No.1

[Filed concurrently with Notice of Motion and Motion to Dismiss; Declaration of Jahmy S. Graham; Request for Judicial Notice; and [Proposed] Order]

Complaint Filed:  12/19/2023
FAC Filed:  1/28/2024

---

MEMORANDUM ISO DEFENDANTS' MOTION TO DISMISS FAC

# TABLE OF CONTENTS

Pages(s)

I. INTRODUCTION ................................................................................................ 1

II. RELEVANT ALLEGATIONS ........................................................................ 3

    A. The Alleged Deceptive Practice .............................................................. 3

    B. Plaintiffs' Experiences Ordering McDonald's Breakfast Meals ............ 4

III. RELEVANT LEGAL STANDARDS .............................................................. 5

IV. LEGAL ARGUMENT ..................................................................................... 6

    A. Plaintiffs Fail to Plausibly Plead Their Consumer Protection Claims (Count I) with Particularity ...................................................................... 6

        1. Plaintiffs' overbroad "Count I" illustrates choice-of-law issues abound, and warrant dismissal, even at the pleadings stage .......... 8

        2. Plaintiffs' amorphous consumer protection claims fail the reasonable consumer test ............................................................... 13

        3. Plaintiffs' Misrepresentation and Omission Theories Fail .......... 16

    B. Plaintiffs Fail to State Breach of Contract Claims ................................ 20

        1. Advertisements on menu boards do not constitute offers ........... 20

        2. Plaintiffs fail to plausibly plead a breach of any specific promise or obligation ................................................................................ 22

        3. Plaintiffs lack privity to assert a breach of contract claim .......... 22

        4. Plaintiffs' promissory estoppel claims also fail .......................... 23

    C. The Intentional and Negligent Misrepresentation Claims Fail ............. 24

    D. Plaintiffs' Unjust Enrichment Claims Fail ........................................... 25

V. CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Angiano v. Anheuser-Busch InBev Worldwide, Inc.*,
  532 F. Supp. 3d 911 (C.D. Cal. 2021) .................................................... 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................... 5

*Banner Ent., Inc. v .Super. Ct.*,
  62 Cal.App.4th 348 (1998) ................................................................ 21

*Barrett v. Optimum Nutrition*,
  No. CV 21-4398-DMG (SKX), 2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) 24, 25

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ........................................................... 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................... 5, 6, 19

*Bitton v. Gencor Nutrients, Inc.*,
  654 Fed. App'x. 358 (9th Cir. 2016) ................................................. 12

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230 (2011) ...................................................... 17, 19

*C.R. v. Tenet Healthcare Corp.*,
  169 Cal. App. 4th 1094, (2009) ......................................................... 17

Chavez v. Wal-Mart Stores, Inc.,
  2014 WL 12591244 (C.D. Cal. Mar. 3, 2014)......................................... 8

*Clark v. InComm Fin. Servs., Inc.*,
  No. EDCV 22-1839 JGB (SHKx), 2023 WL 5167364 (C.D. Cal. July 17, 2023)  11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)........................................................................... 8

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ............................................................. 9

*Debbs v. Chrysler Corp.*,
  810 A.2d 137 (Pa. Super. 2002) ................................................................ 9

*Fabozzi v. Stubhub Inc.*,
  No. C–11–4385 EMC, 2012 WL 506330 (N.D.Cal. Feb.15, 2012) ...................... 14

*Fed. Deposit Ins. Corp. v. Dintino*,
  167 Cal. App. 4th 333 (2008) ................................................................ 10

*Fleming v. Matco Tools Corp.*,
  No. 19-CV-00463-WHO, 2020 WL 6461327 (N.D. Cal. Nov. 3, 2020) .............. 12

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
  352 F.3d 367 (9th Cir. 2003) ................................................................ 23

*Glenn v. Hyundai Motor Am.*,
  No. SA CV 15-2052-DOC (KESx), 2016 WL 3621280 (C.D. Cal. June 24, 2016) 8

*Graham v. VCA Antech*,
  Case No. 2:14-08614-CAS-JC, 2016 WL 5958252 (C.D. Cal. Sept. 12, 2016) ... 21,
  22

*Gray v. Toyota Motor Sales, U.S.A.*,
  No. CV 08-1690 PSG JCX, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ............ 18

*Gunaratna v. Dennis Gross Cosmetology LLC*,
  No. CV 20-2311-MWF (GJSx), 2020 WL 8509681 (C.D. Cal. Nov. 13, 2020) ..... 8

*Hall v. Marriott Int'l, Inc.*,
  344 F.R.D. 247 (S.D. Cal. 2023) ............................................................ 24

*Ham v. Hain Celestial Group, Inc.*,
  70 F.Supp.3d 1188 (N.D. Cal. 2014) ...................................................... 23

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................ 17

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) .................................................. 25

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) .................................................. 25

*In re Nexus 6P Prod. Liab. Lit.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ...................................................... 7

iii

TABLE OF AUTHORITIES

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013) ................................................................. 12

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .............................................................................. 6

*Kelton v. Hollis Ranch, LLC*,
  927 A.2d 1243 (N.H. 2007) ................................................................................. 9

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...................................................................... 6, 15

*Konik v. Cable*,
  CV07-763 SVW (RZx), 2009 WL 10681970 (C.D. Cal. Dec. 2, 2009) .......... 21, 22

*Kumar v. Salov N. Am. Corp.*,
  No.14-CV-2411-YGR, 2015 WL 457692 (N.D. Cal. Feb. 3, 2015) .................... 22

*Lewis v. Casey*,
  518 U.S. 343 (1996) ............................................................................................. 8

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) .............................................................................. 17

*Lomeli v. Jackson Hewitt, Inc.*,
  2017 WL 4773099 (C.D. Cal. Oct. 19, 2017) .................................................... 12

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................. 6

*Mazza v. American Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................................... 8, 9

*Muhareb v. Lowe's HIW Inc.*,
  Case No. EDCV 12-01290 VAP (OPx), 2012 WL 12892156 (C.D. Cal. Oct. 25,
  2012) ................................................................................................................. 20

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ............................................................................... 8

*Outboard Marine Corp. v. Sup. Ct.*,
  124 Cal. Rptr. 852 (Cal. Ct. App. 1975) ........................................................... 11

*Overton v. Bird Brain, Inc.*,
  No. SACV 11-1054 DOC ANX, 2012 WL 909295 (C.D. Cal. Mar. 15, 2012) .... 25

iv

*Panama W., Inc. v. Panama Jack, Inc.*,
 No. SACV141412DOCANX, 2015 WL 13919136 (C.D. Cal. Feb. 27, 2015) ..... 24

*Pelayo v. Nestle USA, Inc.*,
 989 F. Supp. 2d 973 (C.D. Cal. 2013) ....................................................... 14

*Regueiro v. FCA US, LLC*,
 No. 2:22-cv-05521-SPG-MAR, 2023 WL 3564761 (C.D. Cal. May 4, 2023) ...... 25

*Robinson Helicopter Co. v. Dana Corp.*,
 34 Cal. 4th 979 (2004) .......................................................................... 16

*RRTM Rest. Corp. v. Keeping*,
 766 S.W.2d 804 (App. Ct. 1988) .............................................................. 11

*Salameh v. Tarsadia Hotel*,
 726 F.3d 1124 (9th Cir. 2013) ................................................................. 6

*Saling v. Royal*,
 No.2:13–cv–1039–TLN–EFB PS, 2015 WL 5255367 (E.D. Cal. Sept. 9, 2015).... 7

*Sanders v. Apple Inc.*,
 672 F. Supp. 2d 978 (N.D. Cal. 2009) ....................................................... 18

*Sateriale v. R.J. Reynolds Tobacco Co.*,
 No CV 09-8394 CAS (SSx), 2010 WL 3153548 (C.D. Cal. July 12, 2010).......... 23

*Smith v. Ford Motor Co.*,
 462 F. App'x 660 (9th Cir. 2011) ............................................................. 25

*Smith v. Ford Motor Co.*,
 749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd,* 462 F. App'x 660 (9th Cir. 2011)... 17

*Spiegler v. Home Depot U.S.A., Inc.*,
 552 F. Supp. 2d 1036 (C.D. Cal. 2008) ..................................................... 20

*Sponchiado v. Apple Inc.*,
 No. 18-cv-07533-HSG, 2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ................. 8

*Sprewell v. Golden State Warriors,*
 266 F.3d 979 (9th Cir. 2001) ............................................................. 6, 15

*Strickland v. Kafko Mfg., Inc.*,
 512 So. 2d 714 (Ala. 1987)...................................................................... 9

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .................................................................. 7

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ................................................................ 24

*US Ecology, Inc. v. State of Cal.*,
  129 Cal.App.4th 887 (2005) ................................................................. 23

*Valle de Oro Bank v. Gamboa*,
  26 Cal. App. 4th 1686 (1994) .............................................................. 20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................ 6

*W. Filter Corp. v. Argan, Inc.*,
  540 F.3d 947 (9th Cir. 2008) ............................................................... 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................... 13

*Williamson v. Reinalt-Thomas Corp.*,
  No. 5:11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012)...... 13, 14

*Zhang v. Sup. Ct.*,
  57 Cal. 4th 364 (Cal. 2013) ................................................................. 11

Statutes

815 Ill. Comp. Stat. Ann. 505/10a(e) ........................................................ 10

Ala. Code § 8-19-10(f) ............................................................................ 9

Ala. Code § 8-19-3 .................................................................................. 9

Ala. Code § 8-19-5 ................................................................................ 11

Alaska Stat. § 45.50.531(f) ...................................................................... 10

Cal Bus. & Prof. Code § 17208 ............................................................... 10

Cal. Bus. & Prof. Code § 17200 ........................................................... 7, 10

Cal. Bus. & Prof. Code § 17500 ............................................................... 7

Cal. Civ. Code § 1770 ............................................................................ 10

vi

Cal. Civ. Code § 1782(a) ................................................................................... 11

Cal. Civ. Code § 1783 ...................................................................................... 10

Cal. Civ. Code. § 1770(a)(6) and (9) ................................................................ 7

Cal. Civ. Proc. Code § 337(a) ......................................................................... 10

Cal. Civ. Proc. Code § 338(d) ......................................................................... 10

Cal. Civ. Proc. Code § 339(1) ......................................................................... 10

Colo. Rev. Stat. 6–1–105(1) .............................................................................. 9

Conn. Gen. Stat. § 42-110g(f) ......................................................................... 10

D.C. Code § 12-301(8) .................................................................................... 10

Ga. Code Ann. § 10-1-401(a) .......................................................................... 10

Ind. Code Ann. § 24-5-0.5-5(b) ...................................................................... 10

Kan. Stat. Ann. § 60-512 ................................................................................. 10

Mass. Ann. Laws ch. 260, § 5A ...................................................................... 10

Md. Code. Ann. Cts. & Jud. Proc. § 5-101 ..................................................... 10

Miss. Code Ann. § 75-24-15(4) ......................................................................... 9

Mont. Code Ann. § 30-14-133(1) ...................................................................... 9

N.C. Gen. Stat. § 75-16.2 ............................................................................... 10

N.H. Rev. Stat. Ann. § 358-A:10-a(I) ............................................................... 9

N.J. Stat. Ann. § 56:8–2 ................................................................................... 9

Neb. Rev. Stat. § 59-1612 ............................................................................... 10

Neb. Rev. Stat. Ann § 87-303.10 .................................................................... 10

S.C. Code Ann. § 39-5-150 ............................................................................. 10

S.D. Codified Laws § 37-24-33 ....................................................................... 10

Tenn. Code Ann. § 47-18-109(g) ...................................................................... 9

Tex. Bus. & Com. Code § 17.565 ................................................................ 10

Tex. Bus. & Com. Code Ann. § 17.46 ........................................................ 11

Utah Code Ann. § 13-11-19 ....................................................................... 10

Va. Code Ann. § 59.1-204.1(A) .................................................................. 10

Rules

Fed. R. Civ. P. 12 ......................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................ 5

Fed. R. Civ. P. 15(a)(1) ................................................................................ 1

Fed. R. Civ. P. 23(b)(3) .............................................................................. 11

Fed. R. Civ. P. 8(a)(2) ................................................................................ 13

Fed. R. Civ. P. 9(b) ................................................. 1, 3, 6, 7, 12, 13, 15, 24

Fed. R. Evid. 201(b) ............................................................................. 6, 15

TABLE OF AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Amber Meyers, Nasim Shariatpanahi, and John Taferner's ("Plaintiffs") First Amended Complaint[1] ("FAC") purports to state claims for relief on behalf of consumers across the U.S. against McDonald's Corporation and McDonald's USA, LLC ("Defendants"). Plaintiffs allege "McDonald's" misleads consumers by purportedly advertising breakfast meals to include an orange juice on its menu boards and/or billboards offered at a fixed meal combination price, only to add an "upcharge" for customers who actually order an orange juice, instead of a small premium coffee, as part of a breakfast meal. Respectfully, this overreaching allegation impermissibly stretches the bounds of *Iqbal/Twombly*'s plausibility standard and the reasonable consumer test. Plaintiffs thus fail to state a claim for relief under any theory for at least the following reasons:

*First*, Plaintiffs fail to plausibly allege Defendants violated the consumer protection laws of Plaintiffs' home state (California), much less all fifty states. Plaintiffs also fail to plead these fraud-based consumer protection claims with particularity under Rule 9(b).[2] Instead, Plaintiffs merely **list** 57 separate statutes under Count I, without alleging what each statute requires with specificity and how they each specifically apply to this case. This is particularly egregious where, as here: (1) Plaintiffs' claims are governed by the laws of the state where each of them made their purchases (since they lack standing in states where they did not make a purchase);

---

[1] Plaintiff Meyers filed the original Complaint on December 19, 2023 (ECF No. 3), and served Defendants on December 27, 2023. *See* Declaration of Jahmy S. Graham ("Graham Decl.") ¶ 3. The parties filed a Joint Stipulation on January 12, 2024 extending Defendants' time to answer the Complaint until February 16, 2024. ECF No. 18. On January 28, 2024, Plaintiffs filed the FAC without Defendants' written consent or leave of Court. *See* ECF No. 20. By filing an amended complaint more than 21 days after serving the initial complaint, and ***prior to*** Defendants filing a responsive pleading or Rule 12 motion, Plaintiffs have violated Rule 15(a)(1). Without waiving Defendants' objection to Plaintiffs' premature filing of the FAC, Defendants submit their response to the now-operative FAC.

[2] References to "Rule" mean the Federal Rule(s) of Civil Procedure.

and (2) material differences abound in required elements, permissibility of collective treatment, statutes of limitations, standards of liability, pre-suit notice, franchisor-franchisee laws, and the like.

*Second*, Plaintiffs' amorphous consumer protection claims fail the reasonable consumer test because Plaintiffs' own allegations show that a reasonable consumer is not likely to be deceived by Defendants' alleged actions. Even assuming an upcharge for orange juice is material to a reasonable consumer, the upcharge was disclosed *at virtually every step of the purchasing-process* at the McDonald's franchises where they each purchased a breakfast meal with orange juice; and at least one Plaintiff (Taferner) confirmed that a cashier *verbally* disclosed the upcharge *before* the transaction was complete. Plaintiffs also received a receipt that disclosed the upcharge. While Plaintiff Meyers alleges she felt deceived because she "never paid attention to the receipt,"[3] and Plaintiff Shariat[4] alleges she "never really paid any attention to the receipt, because more often than not [she is] ***usually hungover*** when [she] orders McDonald's,"[5] both Plaintiffs' concession cannot shift the burden to Defendants to somehow compel customers to *actually* review their receipts. Taken to its natural and logical conclusion, Plaintiff Shariat's subjective expectation would seem to require a restaurant's menu, receipt, and verbal disclosures about the pricing of its meals (and related items) to be objectively clear and conspicuous and not purportedly misleading to someone who is inebriated, recovering from intense intoxication, or otherwise has their judgment and/or powers of observation potentially impaired or compromised. The FAC cites no legal authority for such a proposition under the reasonable consumer test or otherwise.

*Third*, Plaintiffs fail to state breach of contract claims because (1) advertisements on menu boards generally do not constitute offers; (2) Plaintiffs have

---

[3] FAC ¶ 28.

[4] This is how the FAC abbreviates this Plaintiff's name. FAC ¶ 7.

[5] Declaration of Nasim Shariatpanahi ("Shariat Decl."), ¶12 (emphasis added); FAC ¶ 31.

not plausibly alleged privity with Defendants, as required; and (3) Plaintiffs received the benefit of their bargains and have not adequately pled any breach, much less overpayment. Relatedly, Plaintiffs fail to plead promissory estoppel in the alternative because the FAC's conclusory allegations do not reveal an offer, much less acceptance and detrimental reliance; and Plaintiffs have an adequate legal remedy.

*Fourth*, Plaintiffs' intentional and negligent misrepresentation claims fail for similar reasons as their consumer protection claims. Further, by improperly lumping both defendants together without distinguishing between each defendant's purported conduct, Plaintiffs fail to satisfy Rule 9(b). Plaintiffs' negligent misrepresentation claims should also be independently dismissed under the economic loss rule.

*Fifth*, Plaintiffs' unjust enrichment "claim" fails because California, where all three Plaintiffs allegedly purchased McDonald's breakfast meals with orange juice, does not recognize a standalone claim for unjust enrichment. Further, Plaintiffs do not allege an inadequate legal remedy, which is dispositive since unjust enrichment applies only in the absence of an adequate remedy at law.

Accordingly, the Court should dismiss the FAC in its entirety.

## II.    RELEVANT ALLEGATIONS

The FAC alleges four counts for (1) violations of various state consumer protection statutes, (2) breach of contract and promissory estoppel, (3) intentional and negligent misrepresentation, and (4) unjust enrichment. FAC ¶¶ 90-122. Plaintiffs seek to represent a putative nationwide class, as well as several overlapping sub-classes, of individuals and entities who purchased an orange juice with any breakfast meal from "McDonald's" within the last four years. *Id.* ¶¶ 13, 74-89.

### A. The Alleged Deceptive Practice

All three Plaintiffs claim to have been misled by advertisements that display a breakfast meal pictured with an orange juice, because while a small coffee or soft drink is included in the price, there is an additional charge (upcharge) for orange juice. *Id.* ¶¶ 13-15. Plaintiffs allege Defendants failed to provide sufficient notice of the

orange juice upcharge. *See id*. ¶¶ 59, 95-96.

## B. Plaintiffs' Experiences Ordering McDonald's Breakfast Meals

Given there are multiple Plaintiffs and different allegations of when and where they purchased breakfast meals with orange juice, for the Court's convenience, Defendants have aggregated the following information into a chart:

| Plaintiff's Name | Residence | Location of Alleged Meal Purchase(s) | Alleged Purchase Frequency | FAC ¶ | Decl. ¶ |
|---|---|---|---|---|---|
| Amber Meyers | Riverside County, California | Two locations in California (both in Palm Springs) | 3-4 times per month for the last one year | 5, 16-17 | 1-5 |
| Nasim Shariatpanahi | Los Angeles County, California | Two locations in California (Sherman Oaks and Encino) | Once per month for the last eight years | 7, 18-19 | 1-4 |
| John Taferner | Los Angeles County, California | Santa Clarita, California | One time around November to December 2023 | 6, 34-35 | 1-3 |

All three Plaintiffs allege the menu board is misleading because the "cost of the advertised meal (i.e., $8.79 in bold font), followed by the cost of the orange juice (i.e., $1.40 and not in bold font), makes it appear as if the orange juice is included in the applicable meal price as advertised." *Id*. ¶ 26. Plaintiffs concede, however, the drive-through menu boards contain a written disclosure directly below the Breakfast Meals stating that "Meals include hashbrown and a small premium roast coffee. Pick a different drink or side for an additional charge." *Id*. ¶ 21. While an order total is also shown on the screen, Plaintiffs complain there is no subtotal—even though the charge for the orange juice is the only itemized product in the meal that has a separate price listed (in addition to the total price of the meal itself). *See id*. ¶ 25.

Plaintiffs admit the in-store menu boards also contain the same disclosure that the drive-through menu boards have. FAC ¶ 42. The in-store menu boards also display photos of Breakfast Meals No. 1-8, showing the breakfast sandwich next to a photo

of a coffee or an orange juice (alternating every other meal). *See* Pls.' Exhs. G-H.

Plaintiffs allege the only time the additional price for orange juice is identified as an "upcharge" in writing is on the receipt, after payment is remitted. FAC ¶ 45. However, despite ordering breakfast meals with an orange juice from McDonald's franchises for several years, Plaintiff Meyers "frankly never paid attention to the receipt." Declaration of Amber Meyers ("Meyers Decl.) ¶ 9. Plaintiff Shariat has been a monthly customer for eight years but also "never really paid attention to the receipt" that clearly discloses the upcharge "because more often than not [she's] usually hungover when [she] order[s] McDonald's . . . ." Shariat Decl. ¶ 12. Plaintiff Taferner alleges "the only time a consumer becomes aware of the cost of the surcharge is on the receipt" despite the fact that while he was ordering an orange juice with his meal— *i.e.*, **before** paying and receiving a receipt—**"[t]he cashier then mentioned that there will be an extra charge for the orange juice**."[6]

Even though Plaintiffs admit (1) the menu discloses a beverage besides coffee may have an additional charge, (2) the order confirmation board provides a line item with an additional price next to an orange juice if it is ordered, which provides a total order cost that *includes* the upcharge, (3) some cashiers verbally inform customers before the transaction is complete that choosing orange juice adds an additional cost, and (4) the receipt confirms the upcharge, Plaintiffs claim "the surcharge goes unnoticed by consumers and cannot be reasonably avoided." FAC ¶ 96.

## III.    RELEVANT LEGAL STANDARDS

Rule 12(b)(6) warrants dismissal unless the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 555). Factual allegations "must be enough to

---

[6] FAC ¶ 38; Declaration of John Taferner ("Taferner Decl.") ¶ 6 (emphasis added).

raise the right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Although courts must take as true all material facts adequately alleged in a complaint and accept any reasonable inferences therefrom, they need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

Claims sounding in fraud must meet Rule 9(b)'s heightened pleading standard of particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). The "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citations omitted). Alleged misrepresentations require plaintiffs to state the time, place, and *specific content* of the false representations, as well as allegations of reliance on the purported misrepresentations sounding in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–27 (9th Cir. 2009). Rule 9(b) also applies to omissions. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).

The Court may judicially notice documents "incorporated by reference" in the complaint. *See* Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell,* 266 F.3d at 988.

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs Fail to Plausibly Plead Their Consumer Protection Claims (Count I) with Particularity.

Because Plaintiffs' consumer protection claims sound in fraud (hereafter the "fraud-based claims"), they must meet Rule 9(b)'s heightened pleading standard.[7] *E.g.*, *Vess*, 317 F.3d at 1103–04.  Respectfully, they have failed to do so.

As a threshold matter, Plaintiffs do not even attempt to separately allege by count or cause of action which particular state consumer protection claims they are

---

[7] Plaintiffs' Count III (Intentional and Negligent Misrepresentation) also sounds in fraud; that count is addressed in Section IV.C below.

MEMORANDUM ISO DEFENDANTS' MOTION TO DISMISS FAC

attempting to assert against Defendants, much less set forth the required elements of each statute and how their allegations satisfy those elements. Plaintiffs cannot allege violations of the consumer protection statutes in all fifty states under one umbrella count; each state's law must be pled as a separate cause of action. *See, e.g.*, *In re Nexus 6P Prod. Liab. Lit.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) (reminding pleaders that "causes of action should not group together multiple sources of law; rather, Plaintiffs should plead separate causes of actions for each source of law, whether federal or state"); *accord Saling v. Royal*, No. 2:13–cv–1039–TLN–EFB PS, 2015 WL 5255367, at *4 (E.D. Cal. Sept. 9, 2015) (dismissing complaint for asserting multiple causes of action in one count).[8]

Notably, although they are each from California and purportedly made their purchases *in California*, Plaintiffs do not even separately assert causes of action (or counts) for *California's* consumer protection statutes: the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); and the Consumers Legal Remedies Act, Cal. Civ. Code. § 1770(a)(6) and (9) ("CLRA"). Instead, Plaintiffs merely (1) state that each Plaintiff and putative class member is "a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he/she was charged an Orange Juice Surcharge;" (2) claim those consumer protection laws "declare that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful;" (3) state that "[e]ach of the fifty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising;" and then (4)

---

[8] Plaintiffs' pleading additionally lacks particularity because it does not delineate the conduct of each Defendant. Rule 9(b) does not allow a complaint to merely lump multiple defendants together. The rule "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

*list* 57 separate statutes, without alleging what each statute requires with specificity and how they each specifically apply to this case. *See* FAC ¶¶ 92-94, 100. That approach fails under applicable law. *See Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2020 WL 8509681, at *7 (C.D. Cal. Nov. 13, 2020) ("Merely listing the name and code section of other states' consumer protection statutes does not suffice to state a claim."); *see also Chavez v. Wal-Mart Stores, Inc.*, 2014 WL 12591244, at *4 (C.D. Cal. Mar. 3, 2014) (dismissing laundry-list pleading of other states' statutes). Accordingly, these claims should be dismissed.

### 1. Plaintiffs' overbroad "Count I" illustrates choice-of-law issues abound, and warrant dismissal, even at the pleadings stage.

Plaintiffs' claims are governed by the laws of the state where each of them purchased their breakfast meals with orange juice.[9]  Accordingly, *Mazza v. American Honda Motor Co., Inc.* is instructive. 666 F.3d 581, 590 (9th Cir. 2012).[10]  In *Mazza*, plaintiffs brought a putative class action against Honda for alleged violations of California's consumer protection laws. *Id.* at 585. Although Honda was headquartered in California and made the alleged misrepresentations in California, the transaction that caused the alleged injury occurred in other states for most putative class members.

---

[9] Plaintiffs lack standing to bring claims based on the laws of states in which they do not reside or purchased breakfast meals with orange juice. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (noting "a plaintiff must demonstrate standing for each claim he seeks to press" and "standing is not dispensed in gross"); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (citations omitted); *Sponchiado v. Apple Inc.*, No. 18-cv-07533-HSG, 2019 WL 6117482, at *7 (N.D. Cal. Nov. 18, 2019) (dismissing claims under the laws of states in which no named plaintiff resides for lack of standing).

[10] While *Mazza*, overruled on other grounds, *see Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), was decided at the class certification stage, several courts have held it is instructive at the motion to dismiss phase. *See, e.g.*, *Glenn v. Hyundai Motor Am.*, No. SA CV 15-2052-DOC (KESx), 2016 WL 3621280, at *5 (C.D. Cal. June 24, 2016).

8

*Id.* at 590.  The Ninth Circuit reversed the district court's certification of a national class after concluding, under California's choice-of-law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  *Id.* at 594.

Here, as the Ninth Circuit observed, the consumer protection laws that Plaintiffs bring their claims under have widely divergent elements.  *See Id.* at 591. First, for example, while some states may not require scienter, many other states' consumer protection statutes (*e.g.*, the Alabama DTPA, New Hampshire CPA, Colorado CPA, New Jersey CFA, and the Pennsylvania UTCPL)[11] do.[12]

Second, some state consumer protection statutes do not permit class actions.  For example, California, Texas, Washington, and New Hampshire allow consumers to bring class actions, but Mississippi, Montana, and Tennessee do not.[13]  In Alabama, only the Alabama Attorney General can bring a class action under the Alabama DPTA.  *See* Ala. Code § 8-19-10(f). In New Hampshire, consumers may only bring a class action against a defendant that has a principal place of business within the state, and the class must consist of members whose claims arose in New Hampshire.  N.H. Rev. Stat. Ann. § 358-A:10-a(I).

---

[11] The Alabama Deceptive Trade Practices Act is hereinafter the "Alabama DTPA." The New Hampshire Consumer Protection Act is hereinafter the "New Hampshire CPA."  The Colorado Consumer Protection Act is hereinafter the "Colorado CPA." The New Jersey Consumer Fraud Act is hereinafter the "New Jersey CFA." The Pennsylvania Unfair Trade Practices and Consumer Protection Law is hereinafter the "Pennsylvania UTCPL."

[12] *Compare Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006), *with Strickland v. Kafko Mfg., Inc.*, 512 So. 2d 714, 718 (Ala. 1987), Ala. Code § 8-19-3, *and* Colo. Rev. Stat. 6–1–105(1)I, (g), (u) (violation must be knowingly), *and* N.J. Stat. Ann. § 56:8–2 (knowledge and intent for omissions), *and Kelton v. Hollis Ranch, LLC*, 927 A.2d 1243, 1246 (N.H. 2007), *and Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. 2002) (knowledge or reckless disregard).

[13] *See* Miss. Code Ann. § 75-24-15(4); Mont. Code Ann. § 30-14-133(1); Tenn. Code Ann. § 47-18-109(g).

Third, the applicable statute of limitations for each consumer protection statute varies across jurisdictions. Some states (*e.g.*, California, Nebraska, Massachusetts, North Carolina, and South Dakota) have four-year statutes of limitations from the date the claim accrues.[14] Connecticut, District of Columbia, Illinois, Kansas, Maryland, South Carolina, and Utah have three-year statutes of limitations.[15] Alaska, Georgia, Idaho, Indiana, Texas, and Virginia have two-year statutes of limitations.[16] Plaintiff Shariat, for example, implies she has been purchasing breakfast meals with the orange juice upcharge for up to eight years. FAC ¶ 18. As a result, her claims are facially barred by California's four-year statute of limitations.[17]

Fourth, the standards of liability materially differ because the conduct proscribed under many consumer protection statutes differ. For example, California's UCL prohibits "unlawful, unfair, or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. The CLRA prohibits fraudulent or deceptive marketing or representations. Cal. Civ. Code § 1770. The Alabama DPTA and Texas DTPA prohibit "unfair" business practices that are grounded in deception or

---

[14] Cal. Civ. Code § 1783; Cal Bus. & Prof. Code § 17208; Neb. Rev. Stat. § 59-1612; Neb. Rev. Stat. Ann § 87-303.10; Mass. Ann. Laws ch. 260, § 5A; N.C. Gen. Stat. § 75-16.2; S.D. Codified Laws § 37-24-33.

[15] Conn. Gen. Stat. § 42-110g(f); D.C. Code § 12-301(8); 815 Ill. Comp. Stat. Ann. 505/10a(e); Kan. Stat. Ann. § 60-512; Md. Code. Ann. Cts. & Jud. Proc. § 5-101; S.C. Code Ann. § 39-5-150; Utah Code Ann. § 13-11-19.

[16] Alaska Stat. § 45.50.531(f); Ga. Code Ann. § 10-1-401(a); Idaho Code § 48-619; Ind. Code Ann. § 24-5-0.5-5(b); Tex. Bus. & Com. Code § 17.565; Va. Code Ann. § 59.1-204.1(A).

[17] For the same reason, Plaintiff Shariat's claims under Counts II-IV also fail under their respective statutes of limitation. Cal. Civ. Proc. Code § 337(a) (four years for breach of contract); Cal. Civ. Proc. Code § 339(1) (two years for promissory estoppel); Cal. Civ. Proc. Code § 338(d) (three years for intentional misrepresentation); *W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 951 (9th Cir. 2008) (two years for negligent misrepresentation); *see Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 348 (2008) (three years for unjust enrichment).

10

misrepresentation.[18] Accordingly, plaintiffs in Alabama and Texas *cannot* use the alleged violation of another statute to claim an "unlawful" practice as a predicate violation of its respective consumer protection statute, as *can* be done under California's UCL. *See id.*; c*f. Zhang v. Sup. Ct*., 57 Cal. 4th 364, 370 (Cal. 2013) ("By proscribing 'any unlawful' business act or practice, the UCL 'borrows' rules set out in other laws and makes violations of those rules independently actionable.") (citation omitted).

Fifth, some consumer protection statutes require pre-suit notice, while others do not. California, for example, requires pre-suit notice if a plaintiff is seeking damages under the CLRA.[19] In fact, at least 30 days **before** filing an action for damages, a plaintiff must notify a defendant of the alleged CLRA violation and demand that the defendant "correct, repair, replace or otherwise rectify" the alleged violation. Cal. Civ. Code § 1782(a). Despite their premature amendment of the complaint, Plaintiffs do not allege (nor can they) that they served Defendants with a CLRA demand and provided them with an opportunity to "correct, repair, replace or otherwise rectify" the alleged violation. Cal. Civ. Code § 1782(a). Therefore, to the extent these California Plaintiffs are attempting to assert a CLRA claim for damages, either on their own behalf or on behalf of a Rule 23(b)(3) putative class, they are precluded from doing so given they did not comply with this pre-suit notice requirement. *See Clark v. InComm Fin. Servs., Inc.*, No. EDCV 22-1839 JGB (SHKx), 2023 WL 5167364, at *4 (C.D. Cal. July 17, 2023) (quoting *Outboard Marine Corp. v. Sup. Ct.*, 124 Cal. Rptr. 852, 859 (Cal. Ct. App. 1975) (noting "California courts require

---

[18] The Alabama DTPA prohibits twenty-six specific acts and has one catchall category for "unconscionable, false, misleading, or deceptive act[s]." Ala. Code § 8-19-5. The Texas Deceptive Trade Practices Act ("DTPA") prohibits "false, misleading, or deceptive acts," by analyzing "whether the statement has a tendency to deceive the ignorant, the unthinking, and the credulous who do not stop to analyze but are governed by appearances and general impressions." Tex. Bus. & Com. Code Ann. § 17.46; *RRTM Rest. Corp. v. Keeping*, 766 S.W.2d 804, 808 (App. Ct. 1988).

[19] The CLRA is one of the 57 statutes Plaintiffs listed in the FAC. FAC ¶ 94(e).

the 'literal application' of the notice provision")); *see also Bitton v. Gencor Nutrients, Inc.*, 654 Fed. App'x. 358, 362 (9th Cir. 2016) (dismissing CLRA damages claim for failure to provide pre-suit notice 30 days before filing the claim).

Sixth, each state's franchisor-franchisee laws also vary.[20] In any event, "where a plaintiff alleges that a defendant is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency relationship be pled with particularity." *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1061 (N.D. Cal. 2013). In the context of a franchisor-franchisee relationship, whether a franchisor may be liable for a franchisee's conduct in the course of its business depends on whether the franchisor "has retained or assumed a general right of control" over the relevant aspects of the franchisee's business. *See Lomeli v. Jackson Hewitt, Inc.*, 2017 WL 4773099, at *5 (C.D. Cal. Oct. 19, 2017).  Plaintiffs' FAC alleges "McDonald's" informs customers that "[l]ots of variables affect pricing" and that "[i]ndividual stores set their own prices based on those variables." FAC ¶ 51. The FAC is thus devoid of allegations that Defendants actually control the prices set by, and the conduct of, all McDonald's franchises regarding orange juice with breakfast meals, much less at the specific McDonald's franchises where these named Plaintiffs made their alleged purchases. (*See generally id.*) Plaintiffs' failure to allege with particularity each Defendant's involvement and degree of control over the alleged misconduct warrants dismissal of their claims.  *See Lomeli*, 2017 WL 4773099, at *5 (dismissing claim under Rule 9(b) because plaintiff failed to allege with particularity the franchisor's involvement and degree of control over the alleged wrongdoing).

Suffice to say, these material differences (in elements, permissibility of collective treatment, statutes of limitations, standards of liability, pre-suit notice, and franchisor-franchisee laws) are non-exhaustive. As a result, Plaintiffs' (1) mere

---

[20] *See, e.g., Fleming v. Matco Tools Corp.*, No. 19-CV-00463-WHO, 2020 WL 6461327, at *3 (N.D. Cal. Nov. 3, 2020) (noting that franchisor-franchisee laws in California and Ohio "differ in fundamental respects").

MEMORANDUM ISO DEFENDANTS' MOTION TO DISMISS FAC

laundry-listing of consumer protection statutes, (2) coupled with amorphous (and inaccurate) assumptions that they all share the same elements, and (3) the conclusory allegation that "[a]ll Orange Juice Surcharges levied by Defendants fall under the scope"[21] of these laws misses the mark by a long shot for Rule 8(a)(2) notice, and 9(b) heightened, pleading requirements in Plaintiffs' attempt to state a claim for relief.

### 2. Plaintiffs' amorphous consumer protection claims fail the reasonable consumer test.

Plaintiffs' purported claims under California's consumer protection statutes are analyzed under the "reasonable consumer" test. *E.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under the reasonable consumer test, Plaintiffs must "show that members of the public are likely to be deceived" by "advertising which is false, [or] advertising[,] which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* Liability is not based on the mere *possibility* of consumers being misled in an unreasonable manner. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (citation omitted).

Where, as here, there is a dispute about whether the price quoted and ultimately paid would be deceptive to a reasonable consumer, courts generally look to whether the plaintiff "was charged the exact fee he was quoted and was given a receipt, which broke down the components of the total charge," including a separate charge (such as the upcharge in this case). *Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-03548-LHK, 2012 WL 1438812, at *10 (N.D. Cal. Apr. 25, 2012).

Here, Plaintiffs' own experiences and allegations show that a reasonable consumer is not likely to be deceived by Defendants' alleged actions. Plaintiffs Meyers and Shariat, for example, allege that they felt deceived because they were

---

[21] *See* FAC ¶ 100.

MEMORANDUM ISO DEFENDANTS' MOTION TO DISMISS FAC

"never informed of a surcharge by any McDonald's representative and never paid attention to the receipt." FAC ¶¶ 28-29, 31. Plaintiff Shariat also alleges that she "never really paid any attention to the receipt, because more often than not [she is] **usually hungover** when [she] order[s] McDonald's." Shariat Decl., ¶12 (emphasis added). Both Plaintiffs' concession that they do not review their receipts, as a matter of law, cannot shift the burden to Defendants to somehow compel customers to *actually* review their receipts. *See Williamson*, 2012 WL 1438812, at *10 (dismissing FAL and CLRA claim because "the receipt, which Plaintiff chose not to examine, put Plaintiff on constructive notice regarding the tire disposal fee"); *see also Fabozzi v. Stubhub Inc.,* No. C–11–4385 EMC, 2012 WL 506330, at *6 (N.D.Cal. Feb.15, 2012) (rejecting Plaintiff's claim under the reasonable consumer test because "Plaintiff agreed to pay the purchase price he actually paid, so there was no deception in the price he was required to pay").

Further, Plaintiff Shariat's "hungover" admission particularly undermines her claim. Taken to its natural and logical conclusion, Plaintiff Shariat's subjective expectation would seem to require a restaurant's menu, receipt, and verbal disclosures about the pricing of its meals (and related items) to be objectively clear and conspicuous and not purportedly misleading to someone who is inebriated, recovering from intense intoxication, or otherwise has their judgment and/or powers of observation potentially impaired or compromised in some respect. The FAC cites no legal authority for such a proposition under the "reasonable consumer" test or otherwise. *See Pelayo v. Nestle USA, Inc*., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (noting the "reasonable consumer" is one who "act[s] reasonably under the circumstances" and is not an "unwary consumer") (citations omitted).

Plaintiff Taferner, on the other hand, admits that a McDonald's cashier affirmatively disclosed the additional pricing to add orange juice to the breakfast meal (*i.e*., without the customer specifically asking whether there was an upcharge). Taferner Decl. ¶ 6. Plaintiff Taferner proceeded with the transaction anyway only to

14

later *still* allege in the FAC that he was misled. Respectfully, this allegation particularly stretches the bounds of even the *Iqbal/Twombly* plausible pleading standard, which is more generous than Rule 9(b)'s heightened particularity standard. Despite Plaintiffs' protestations to the contrary, Plaintiff Taferner *knew* about the upcharge *pre-purchase* and *still chose* to order the orange juice with his breakfast meal. *Id.* ¶ 8. Thus, reliance, deception, materiality, and damages are nonexistent.[22]

Notably, Plaintiff Meyers filed a complaint with the Federal Trade Commission ("FTC"), Report No. 168880801, which she incorporated by reference into the FAC. *See* FAC ¶ 73. The Court may thus properly consider it to be part of the FAC as if its contents were fully stated therein, or it was an attached exhibit, or it is otherwise subject to judicial notice, for purposes of ruling on this Motion to Dismiss.[23] By Plaintiffs' own allegations, that report *misrepresents* business practices at McDonald's franchises across the country, broadly maligning them and falsely ascribing fraudulent intent to them, in that it claims that their "employees ***never*** disclose a surcharge for orange juice, unless specifically asked" and that "the practice is apparent and evident throughout the entire United States." *See* Graham Decl., Exh. 1, p. 1 (emphasis added). As Plaintiff Taferner confirms, at a minimum some McDonald's franchises affirmatively disclose the orange juice upcharge verbally (in addition to the written disclosures) pre-purchase even *without* customer prompting. The Court thus need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell,* 266 F.3d at 988.

All three Plaintiffs contend that the menu board/order display is misleading because the "cost of the advertised meal (i.e., $8.79 in bold font), followed by the cost of the orange juice (i.e., $1.40 and not in bold font)" purportedly "makes it appear as

---

[22] *See* Section IV.A.3 below, discussing the elements of affirmative misrepresentation and omission claims.

[23] *See* Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Defendants have concurrently filed a Request for Judicial Notice ("RJN") regarding this FTC Report, and included a copy in the Graham Declaration for the Court.

if the orange juice is included in the applicable meal price as advertised." *Id.* ¶ 26. While this allegation facially appears to have some minimal appeal to reason, when examined under *Iqbal/Twombly*'s plausibility standard it falls flat. Specifically, Plaintiffs concede the additional charge for orange juice is specially identified ***by line item*** on the menu board/order display ***before*** the transaction is completed. *See* FAC ¶¶ 26, 28-29, 31. In fact, the line item charge for orange juice is the ***only*** separately listed item that has a ***separate price*** listed—leading the reasonable consumer to conclude that the orange juice has an additional charge (as compared to the hash browns or other separate items in the combo meal). *See id.* ¶ 25, Exhs. E-F. Then, the receipt puts reasonable customers on constructive notice, at a minimum, about the proportionate additional cost to add orange juice in place of a soft drink or coffee.

As a result, even viewing the FAC's allegations in a light most favorable to Plaintiffs, but not accepting as true implausible conclusions or rank speculation, the reasonable consumer standard supports Defendants'—not Plaintiffs'—contentions that reasonable consumers would not be misled about the orange juice upcharge.

### 3. Plaintiffs' Misrepresentation and Omission Theories Fail.

In California, a claim of *intentional misrepresentation* requires "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citation omitted). As set forth in Section IV.A.1 (regarding Count I), and in Section IV.C (regarding Count III), Plaintiffs do not come close to stating claims for relief on an intentional misrepresentation theory.

On the other hand, an *omission-based* claim in California requires that: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise

if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011). An omitted fact is material if it is "contrary to a representation actually made by the defendant," concerns a "fact the defendant was obligated to disclose," or (when a product is at issue) undermines the product's central functionality. *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987–88 (N.D. Cal. 2010), *aff'd,* 462 F. App'x 660 (9th Cir. 2011); *Hodsdon v. Mars, Inc.,* 891 F.3d 857, 863-64 (9th Cir. 2018).

First, Plaintiffs have not plausibly pleaded that Defendants concealed or suppressed a material fact. By Plaintiffs' own allegations, even assuming an upcharge for orange juice is material to a reasonable consumer, the upcharge was not concealed or suppressed. On the face of the FAC, quite the opposite is true: it was disclosed to Plaintiffs *at virtually every step of the purchasing-process* at the McDonald's franchises where each Plaintiff made a purchase, and Plaintiff Taferner confirmed that a cashier *verbally* disclosed the upcharge *before* completing the transaction.

Second, even though there was in fact appropriate disclosure, Plaintiffs fail to plausibly plead any of the four narrow exceptions (known as the *LiMandri* factors) to the general rule in California that there is no *duty to disclose* a purportedly omitted material fact unless certain circumstances apply: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."[24] *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). Specifically, Plaintiffs do not allege a (1) ***fiduciary relationship*** with Defendants—nor can they—such as doctor-patient, lawyer-client, broker-investor, or the like. *See C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1107, (2009) (describing different types of fiduciary

---

[24] This is a disjunctive list.

relationships). Plaintiffs have not pleaded (and cannot) that Defendants have (2) ***exclusive knowledge***—the additional cost is affirmatively disclosed on the menu, order display, receipt (and sometimes verbally) so customers also have knowledge (actual or constructive). For the same reasons, Plaintiffs have not plausibly pleaded (3) ***active concealment*** (instead there was ***active disclosure***). *See Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG JCX, 2012 WL 313703, at *9-10 (C.D. Cal. Jan. 23, 2012) (holding that "mere nondisclosure" does not constitute "active concealment"). Likewise, Plaintiffs' duty to disclose contention is belied by the lack of any (4) ***partial disclosures*** and ***suppression*** of material facts.[25] On the face of the FAC, the upcharge was fully disclosed and not "suppressed."

Third, Plaintiffs have not plausibly alleged that Defendants intentionally concealed or suppressed the orange juice upcharge *with the intent to defraud* Plaintiffs. Instead, Plaintiffs cite an alleged "McDonald's Corporation (MCD) Q3 2023 Earnings Call" and claim "in response to California's recent adoption of Assembly Bill (AB) No. 1228 increasing wages to $20.00 an hour for fast food workers at fast food restaurants with more than 60 national establishments under one common brand, Chris Kempczinski, McDonald's Chief Executive Officer" purportedly stated that there would be "higher pricing" and that the company is "in a better position than [its] competitors to weather this." FAC ¶ 64. With this selective quoting and inuendo, Plaintiffs are implying that these alleged statements relate somehow to the orange juice upcharge. *See id.* ¶¶ 64-65. On the face of the FAC, however, such an allegation is implausible since the upcharge predates the earnings

---

[25] *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (dismissing the plaintiff's fraudulent omission claim for failing to "describe with specificity representations made by [the defendant] with respect to the display's component parts that would give rise to a duty to disclose, how he relied on such partial disclosures, or the manner in which such representations or omissions were false and misleading").

1    call (and passage of AB No. 1228) by years.[26] *See, e.g., id.* ¶¶ 5, 16-19. As such, there

2    is no plausible allegation that the upcharge was instituted, or that the font size and/or

3    bolding (or lack thereof) of the upcharge disclosure on the menu boards, or verbal

4    disclosure (where applicable) changed because of a minimum wage increase in

5    California. Plaintiffs' rampant speculation thus fails both the plausibility and the

6    particularity tests. *See Twombly,* 550 U.S. at 555 (noting factual allegations in the

7    complaint "must be enough to raise the right to relief above the speculative level").

8         Fourth, on the *unawareness/would have behaved differently* element, Plaintiffs'

9    purported unawareness of the upcharge is implausible, given most of them are

10   repeated McDonald's customers over several years (and Plaintiff Shariat claims at

11   least eight years), and particularly since they each allege to have been provided a

12   receipt that expressly disclosed the "upcharge" (*i.e.*, by specifically using that word).

13   Relatedly, Plaintiffs have not plausibly alleged that they "would have acted

14   otherwise" had they "known of the [purportedly] concealed or suppressed" upcharge.

15   *Boschma*, 198 Cal. App. 4th at 248. On the face of the FAC under the plausibility

16   standard—and the literal *receipts*—Plaintiffs knew about the upcharge (actually or

17   constructively) and they behaved precisely the same. *See, e.g.,* FAC ¶ 38-39.

18        Fifth, because it was fully disclosed, Plaintiffs have not adequately pleaded that

19   they "sustained damage" as a result of the purported concealment or suppression of

20   the orange juice upcharge. Plaintiffs were each charged the precise amount they were

21   quoted at every stage of the purchase process, and were given a receipt confirming

22   the amount charged. At any time before completing their purchases, Plaintiffs could

23   have changed their minds or simply chosen a different drink that did not include an

---

[26] On September 28, 2023, California Governor Gavin Newsom signed Assembly Bill (AB) No. 1228 into law, repealing the FAST Food Accountability and Standards Recovery Act (FAST Recovery Act) (AB 257) and replacing it with a $20-per-hour minimum wage for fast food workers, among other provisions. *See* RJN at 3-4.

upcharge.[27] To the extent they claim damages for having paid the upcharge each time, they could have (1) promptly requested a refund after reviewing the receipt the first time they purchased a breakfast meal with an orange juice, or (2) not returned to McDonald's to purchase another breakfast meal with an orange juice. Instead, with the lone exception of Plaintiff Taferner (who only alleges one purchase), each Plaintiff claims to have gone back repeatedly to purchase another breakfast meal with orange juice—each time being exposed to the numerous disclosures about the additional charge, including on the receipt.

### B.   Plaintiffs Fail to State Breach of Contract Claims.[28]

For breach of contract, Plaintiffs must plead: (1) a contract; (2) plaintiffs' performance or excuse for nonperformance; (3) defendants' breach; and (4) damage to plaintiffs. *Spiegler v. Home Depot U.S.A., Inc.* 552 F. Supp. 2d 1036, 1051 (C.D. Cal. 2008). At a minimum, Plaintiffs fail to plausibly plead elements (1), (3), and (4).

### 1.   Advertisements on menu boards do not constitute offers.

"California law is clear that there is no contract until there has been a meeting of the minds on <u>all</u> material points." *Muhareb v. Lowe's HIW Inc.*, Case No. EDCV 12-01290 VAP (OPx), 2012 WL 12892156, at *5 (C.D. Cal. Oct. 25, 2012) (emphasis in original) (citation omitted). If Plaintiffs' logic were to prevail, and consumers were presumed to rely only on billboards/advertisements or menu items next to each numbered meal as the complete, intended terms of an offer, then consumers would somehow also plausibly expect certain breakfast meals at McDonald's to ***not*** include ***any*** hashbrowns or beverages at all. *See, e.g.*, FAC, Exhs. A-E, G, and J-L (showing

---

[27] Further, Plaintiffs have a duty to mitigate their purported damages. *See Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994) (noting a "plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided") (citations omitted).

[28] Plaintiffs again combined more than one cause of action into one singular count (Count II: Breach of Contract and Promissory Estoppel). As discussed at length in Sec. IV.A, this is improper pleading.

menu boards with varying combinations of breakfast sandwiches and coffee or orange juice only, breakfast burritos *without* any drinks or hashbrowns, and sandwiches paired with hashbrowns only). The price list of the varying compositions of breakfast food and beverage items on the menu boards thus do not constitute an offer capable of acceptance. *See, e.g., Konik v. Cable*, CV 07-763 SVW (RZx), 2009 WL 10681970, at *4 (C.D. Cal. Dec. 2, 2009) (noting "[t]he general rule is that an advertisement . . . price list, quotation or the like is not an offer, even though the terms of suggested bargains may be stated in some detail").

The "general test for evaluating whether an offer exists is to ask whether the advertiser, *in clear and positive terms* promised performance in exchange for something requested by the advertiser and whether the recipient of the advertisement reasonably might have concluded that by performing the request a contract would [be] formed." *Id.* at *4 (emphasis added) (quotation omitted). Instead of an offer of the complete terms for acceptance, "common sense and general business dealings counsel" that the actual purpose of the photographed items on the menu boards are merely to advertise a sampling of the different meal combinations available. *See Banner Ent., Inc. v .Super. Ct.*, 62 Cal.App.4th 348, 359 (1998) (noting "the failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract"). As a result, because the photographs of the advertised menu items are not offered terms for acceptance, Defendants therefore could not have "breached" any specific promise through a particular McDonald's franchise location having an upcharge for orange juice—which it is permitted to do (and disclose on the menu boards and otherwise). *See Graham v. VCA Antech*, Case No. 2:14-08614-CAS-JC, 2016 WL 5958252, at *11 (C.D. Cal. Sept. 12, 2016) ("Ultimately, the Court is unaware of any statutory or case law that requires a for-profit business to point to a statute or contract that allows it to charge a fee for a service. **The burden is on the plaintiffs to show why [the defendant] was not**

21

1

**permitted to do so**") (internal citations omitted).[29]

2

### 2. Plaintiffs fail to plausibly plead a breach of any specific promise or obligation.

3

4

Although Plaintiffs claim that McDonald's restaurants' "order processing flow

5

and pricing strategy fails to put a reasonable person on notice" of the additional charge

6

for orange juice (FAC ¶ 14), this assertion runs contrary to Plaintiffs' own additional

7

allegations that the menu boards, Plaintiffs' receipts, and McDonald's corporate

8

website all include a disclosure of the additional charge for orange juice. *See, e.g., id.*

9

¶ 14 ("Defendants disclose the existence of a surcharge in writing"); ¶ 48

10

("McDonald's correctly advertises its breakfast meals to the general public (i) on its

11

corporate website . . . (ii) through its instore self-service kiosks . . . and (iii) through

12

third-party delivery service providers"). Plaintiffs do not plausibly allege a breach of

13

contract therefore because (1) there are no plausible allegations that Plaintiffs reached

14

any agreements with Defendants concerning orange juice being included in the total

15

meal price without an upcharge such that their purchase of the meal with orange juice

16

can constitute a binding contract, and (2) the FAC's allegations do not otherwise

17

support any specific promises or obligations on Defendants' end. *See Graham*, 2016

18

WL 5958252, at *14 (rejecting the notion that the placement of an additional fee is

19

misleading where "[t]he Fee is included as a line-item in the same section of plaintiffs'

20

invoices as [the defendant's] other discretionary charges, and therefore is included in

21

the pre-tax 'Subtotal' . . . . Thus, any likelihood of consumer deception is mitigated

22

by . . . placement of the Fee in a location that creates little ambiguity").

23

### 3. Plaintiffs lack privity to assert a breach of contract claim.

24

It is well-settled that "[p]rivity between the parties is a necessary element of a

25

breach of contract claim." *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2015

26

27

28

---

[29] *See also*, *Konik*, 2009 WL 10681970, at *6 (finding "no reasonable consumer would view" the advertisements as a valid offer because "[t]hey do not request a response of any kind" and "the advertisements do not even rise to the level of an offer to negotiate terms").

22

WL 457692, at *6 (N.D. Cal. Feb. 3, 2015). Plaintiffs do not allege that they purchased their breakfast meals (with an orange juice) directly from McDonald's Corporation or McDonald's USA, LLC. *See generally* FAC. Instead, they allege they purchased their meals and orange juice from certain McDonald's franchises in California.[30] As a result, Plaintiffs do not allege they entered into an agreement with Defendants about the price of orange juice with breakfast meals. *Ham v. Hain Celestial Group, Inc.*, 70 F.Supp.3d 1188, 1195-96 (N.D. Cal. 2014) (dismissing contract claim and finding no privity between consumer of organic waffles and waffle manufacturer for claims arising from mislabeling of its waffles as "all natural").

Moreover, Plaintiffs allege that "McDonald's" responded to complaints by advising that individual McDonald's franchisees set their own prices on orange juice upcharges based on numerous factors and variables. FAC ¶ 51. This further highlights the lack of privity with (and control by) Defendants.

### 4.   Plaintiffs' promissory estoppel claims also fail.[31]

This equitable claim is duplicative of the contract claim and thus fails. *See Sateriale v. R.J. Reynolds Tobacco Co.*, No CV 09-8394 CAS (SSx), 2010 WL 3153548 (C.D. Cal. July 12, 2010) (promissory estoppel "functions as a substitute for consideration"); *see also Glen Holly Ent., Inc. v. Tektronix Inc.*, 352 F.3d 367 (9th Cir. 2003) (dismissing promissory estoppel claim where plaintiff "has adequate remedies through its . . . fraud and negligent misrepresentation claims").

Further, to plead promissory estoppel, Plaintiffs must plausibly allege (and have not) the making of a promise that is "clear and unambiguous in its terms;" reliance by the party to whom the promise is made; the reliance is reasonable and foreseeable; and the party asserting estoppel must be injured by his/her reliance. *US Ecology, Inc. v. State of Cal.*, 129 Cal.App.4th 887, 901 (2005).[32]

---

[30] The FAC is silent as to who owns those particular McDonald's franchises.
[31] Plaintiffs (again) combined causes of action that should be separately asserted.
[32] As set forth in Section IV.B.1, the FAC's conclusory allegations do not constitute an offer, much less acceptance and detrimental reliance.

### C. The Intentional and Negligent Misrepresentation Claims Fail.

First, in order to state claims for intentional or negligent misrepresentation, "Plaintiffs must allege: (1) a misrepresentation of fact; (2) knowledge that the representation was false (intentional misrepresentation); or without reasonable grounds for believing it to be true (negligent misrepresentation); (3) with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damages."[33] *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F. Supp. 3d 911, 918 (C.D. Cal. 2021) (citation omitted).

Under Rule 9(b), "a fraud suit against differently situated defendants must 'identify the role of each defendant in the alleged fraudulent scheme.'  In other words, when defendants engage in different wrongful conduct, plaintiffs must likewise 'differentiate their allegations.'"  *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (citations omitted). Plaintiffs fail to satisfy Rule 9(b) because they improperly lump all defendants together without distinguishing between each defendant's purported conduct. The FAC is devoid of any allegations that would establish the relationship between McDonald's Corporation and McDonald's USA, LLC, much less with the particular franchises where Plaintiffs made their alleged purchases, or otherwise identify their respective roles in the alleged "advertising scheme."  *See, e.g.,* FAC ¶¶ 96-97. This failure warrants dismissal on its own.

Second, Plaintiffs' negligent misrepresentation claims should be independently dismissed under the economic loss rule, which "precludes tort claims for purely economic damages that are recoverable under contract." *Barrett v. Optimum Nutrition*, No. CV 21-4398-DMG (SKX), 2022 WL 2035959, at *4 (C.D. Cal. Jan. 12, 2022); *see also Panama W., Inc. v. Panama Jack, Inc.*, No.

---

[33] Plaintiffs' attempt to rely on alleged *nondisclosures* to support their negligent misrepresentation claim (FAC ¶¶ 110, 112) fails because, under California law, a "negligent misrepresentation claim cannot be based on the omission nor suppression of a material fact." *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 267 (S.D. Cal. 2023).

SACV141412DOCANX, 2015 WL 13919136, at *5 (C.D. Cal. Feb. 27, 2015) (negligent misrepresentation "is necessarily barred by the economic loss rule").

Here, to the extent Defendants made any affirmative representations, they were allegedly regarding the inclusion of orange juice as part of the advertised price of a breakfast meal. *See* FAC ¶¶ 1-4. The alleged representations thus concern how much Plaintiffs would receive for the advertised price, and the alleged breach amounts to receiving less than what was purportedly represented at that specific price. Plaintiffs thus do not allege any misrepresentations independent of that alleged breach. *See Barrett*, 2022 WL 2035959 at *4 (dismissing a negligent misrepresentation claim based on the economic loss rule where the alleged representation "concern[ed] how much Product the buyer would receive for the purchase price, and the breach amounts to receiving less than what was represented at that price").

### D. Plaintiffs' Unjust Enrichment Claims Fail.

California does not recognize a standalone cause of action for unjust enrichment. *Smith v. Ford Motor Co*., 462 F. App'x 660, 665 (9th Cir. 2011).[34] Plaintiffs also do not allege an inadequate legal remedy, which is fatal since unjust enrichment "applies only in the absence of an adequate remedy at law." *Overton v. Bird Brain, Inc*., No. SACV 11-1054 DOC ANX, 2012 WL 909295, at *7 (C.D. Cal. Mar. 15, 2012).[35]

### V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiff's FAC in its entirety.

---

[34] *In re ConAgra Foods Inc*., 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012); *see In re Apple & AT & T iPad Unlimited Data Plan Litig*., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing unjust enrichment claim with prejudice because "courts have repeatedly held that 'there is no cause of action in California for unjust enrichment.'") (citation omitted).

[35] The FAC must "clearly allege facts suggesting that monetary damages would not make [Plaintiff] whole." *Regueiro v. FCA US, LLC*, No. 2:22-cv-05521-SPG-MAR, 2023 WL 3564761, at *9 (C.D. Cal. May 4, 2023).

1

2

Dated:  February 16, 2024

NELSON MULLINS RILEY &
SCARBOROUGH LLP

3

4

By:    /s/  Jahmy S. Graham_____
Jahmy S. Graham

5

6

Attorneys for Defendants
MCDONALD'S CORPORATION
MCDONALD'S USA, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

/s/ Jahmy S. Graham
Jahmy S. Graham