UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-2589 JGB (SPx)** | Date | April 18, 2024 |
|---|---|---|---|
| Title | *Amber Meyers, et al. v. McDonalds USA LLC, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendants' Motion to Dismiss (Dkt. No. 21); and (2) VACATING the April 22, 2024 Hearing (IN CHAMBERS)

Before the Court is Defendants McDonald's USA, LLC and McDonald's Corporation's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Motion," Dkt. No. 21.) The Court determines this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion. The Court **VACATES** the April 22, 2024 hearing.

## I.  BACKGROUND

On December 19, 2023, Plaintiffs Amber Meyers and Roes 1 through 50 filed a class action complaint against Defendants McDonald's USA, LLC and McDonald's Corporation (jointly, "Defendants" or "McDonald's"). ("Complaint," Dkt. No. 3.) On January 28, 2024, Plaintiff Amber Meyers ("Meyers") and newly joined Plaintiffs Nasim Shariatpanahi ("Shariat")[1] and John Michael Taferner ("Taferner") (collectively, "Plaintiffs") filed an amended complaint against Defendants. ("FAC," Dkt. No. 20.) The FAC asserts four causes of action: (1) violations of state consumer protection laws; (2) breach of contract and promissory estoppel; (3) intentional and negligent misrepresentation; and (4) unjust enrichment. (See FAC at 1.)

---

[1] Because Plaintiffs refer to Nasim Shariatpanahi as "Shariat," the Court uses Plaintiffs' abbreviation. (See Dkt. No. 20 ¶ 7.)

On February 16, 2024, Defendants filed this Motion. (Motion.) In support of the Motion, Defendants submitted a request for judicial notice ("RJN," Dkt. No. 22) of the following documents: (1) a Federal Trade Commission ("FTC") report filed on behalf of Meyers ("Exhibit 1," Dkt. No. 21-3); (2) a copy of California Assembly Bill ("AB") 1228 ("Exhibit 2," Dkt. No. 21-4); and (3) a posting from the Office of California Governor Gavin Newsom's website ("Exhibit 2A," Dkt. No. 21-5). (RJN at 1-2.)[2]

On March 8, 2024, Plaintiffs opposed the Motion. ("Opposition," Dkt. No. 23.)[3]  On April 8, 2024, Defendants replied. ("Reply," Dkt. No. 24.)

## II.   FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

### A.   Drive-Through Purchases

Meyers resides in Riverside County, California, and she purchases breakfast at McDonald's about 3-4 times per month, at the locations on E. Palm Canyon Drive in Palm Springs and E. Vista Chino in Palm Springs. (FAC ¶¶ 5, 16.) Meyers typically places her order through the drive-through and purchases the "Two Sausage Egg McMuffin" meal with an orange juice, together with either another orange juice or an iced tea. (Id. ¶ 17.)

---

[2] In a motion to dismiss under Rule 12(b)(6), a court may consider "matters of judicial notice" without converting the motion into a motion for summary judgment. U.S. v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice is appropriate for "matters of public record." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Exhibit 1 is subject to judicial notice because it is incorporated by reference into the FAC, and its authenticity is not disputed. See Knievel v. ESPN, 393 F.3d 1068, 1076 (2005); Shalikar v. Asahi Beer U.S.A., Inc., 2017 WL 9362139, *2 (C.D. Cal. Oct. 16, 2017). (See FAC ¶ 73.) Exhibits 2 and 2A are documents publicly accessible on government websites and are thus subject to judicial notice. "[P]ublic records maintained on government websites are generally subject to judicial notice." Johnson v. DBTA, LLC, 424 F. Supp. 3d 657, 662 (N.D. Cal. 2019) (citation omitted). Accordingly, the Court **GRANTS** the RJN.

[3] The Court admonishes Plaintiffs for failure to comply with the Local Rules governing brief length and font size. Though Plaintiffs' Opposition ends on page 25, Plaintiffs' numerous block quotes and footnotes are presented in a size smaller than the required 14-point font. See L.R. 11-3.1.1; L.R. 11-6.1. (See Opposition at 1, 3, 8-9, 12, 15, 20-21, 23-24.) The Court instructs Plaintiffs to read and comply with the Local Rules for any future filings.

Shariat resides in Los Angeles County, California and, for the past eight years, has purchased monthly breakfasts at the McDonald's locations on Ventura Blvd. in Sherman Oaks and Ventura Blvd. in Encino. (Id. ¶¶ 7, 18.) She places her orders through the drive-through and purchases the Sausage Egg McMuffin meal or the Bacon, Egg, and Cheese meal, with an orange juice. (Id. ¶ 19.)

The menu boards state in small, "less than visible" font, directly below the title "Breakfast Meals," that: "Meals include a hashbrown and a small premium roast coffee. Pick a different drink or side for an additional charge. Promotional pricing may be lower than meal pricing." (Id. ¶ 21.) Plaintiffs refer to this statement as the "Breakfast Meals Disclosure." (Id.) Neither Meyers nor Shariat saw a disclosure associated with additional pricing for certain items on the menu board, nor were either made aware of the surcharge associated with the orange juice. (Id. ¶ 20.) McDonald's advertises the breakfast meal with an orange juice pictured next to "one or more meals, at a fixed price for each meal offering." (Id. ¶ 23.) Meyers and Shariat were never aware that there was an extra charge for orange juice because "the menu boards pictured an orange juice as if [it were] included as part of the meals." (Id. ¶ 22.) Even after placing a drive-through order, the order confirmation menu board fails to identify the extra charge for the orange juice as a "Surcharge" or "Upcharge." (Id. ¶ 24.) The order confirmation boards reverse "the itemization shown on a receipt," with the order total shown above the individual costs and without a subtotal:

 

(Id. ¶ 25.) Because the cost of the orange juice (e.g., $1.40 in regular font) follows the cost of the advertised meal (e.g., $8.79 in bold font), it appears as if the orange juice is included in the applicable meal price as advertised. (Id. ¶ 26.)

Meyers was never informed of a surcharge by any McDonald's representative and never paid attention to the receipt, because she believed that McDonald's, "as likely the largest fast-food chain in the world, wouldn't try to hide a fee." (Id. ¶ 28.) Similarly, Shariat was never

made aware of the surcharge, nor did she pay attention to the surcharge, because she expected McDonald's to inform her about the surcharge: "[J]ust like they ask me when I order extra lettuce on my Big Mac or when I order guacamole at Chipotle—the fast-food worker always lets you know that there is an extra charge for ordering the item and the price[.]  I'm surprised they never explained that the orange juice is only available for an additional fee."  (Id. ¶ 29.)  Shariat further stated: "[A]ny time I order a Big Mac from McDonald's with extra lettuce, the cashier always tells me that there is a 30-cent surcharge for the lettuce, so I always assume that McDonald's would let me know about any other surcharge—like an orange juice surcharge."  (Id. ¶ 30.)  Shariat never "really paid attention" to the receipt, because she "expected the attendant to let her know about the additional charge" and "simply wanted to order food and leave."  (Id. ¶ 31.)

If Meyers and Shariat had known there was a surcharge for the orange juice, they would not have ordered the orange juice every time they went to McDonald's.  (Id. ¶ 32.)  They "feel lied to and cheated by McDonald's."  (Id. ¶ 33.)

**B.     In-Store Purchases**

Taferner resides in Los Angeles County, California, and he visits the McDonald's located on Sierra Highway in Santa Clarita.  (Id. ¶ 6.)  Around November to December 2023, Taferner went into the Sierra Highway McDonald's.  (Id. ¶ 34.)  He purchased the Two Sausage Egg Burrito Breakfast Meal, which had an orange juice and hash brown advertised on the menu board as part of the meal.  (Id. ¶ 35.)  The cashier asked what Taferner wanted to drink, and Taferner informed the cashier that he wanted "exactly what was pictured as part of the meal—two [] sausage egg burritos, a hash brown, and the pictured orange juice."  (Id. ¶ 36.)  The cashier asked Taferner again what he wanted to drink, and Taferner told the cashier, "I want what is pictured—the orange juice."  (Id. ¶ 37.)  The cashier mentioned that there was an extra charge for the orange juice, which "caught [Taferner] off guard," because the breakfast meal included a picture of an orange juice, at a fixed price.  (Id. ¶ 38.)  Taferner told the cashier that he would have an orange juice, "only to realize the cost of the orange juice after paying for the meal."  (Id. ¶ 39.)  After looking at his receipt, Taferner realized that around $1.50 was added to the meal's price for the orange juice.  (Id. ¶ 40.)  He was "extremely disappointed and frustrated because that's not what was advertised."  (Id.)

Similar to the drive-through menu board, McDonald's in-store menu board also includes the Breakfast Meals Disclosure, but it is hardly visible given the "small size of the font" and it fails to notify consumers that special pricing or terms apply to the orange juice advertised as part of the meal.  (Id. ¶ 42.)  For instance, the menu board contains no asterisk or other reference marking next to the advertised orange juice to state that special pricing or terms apply.  (Id.)  Instead, McDonald's "simply advertises the breakfast meal with an orange juice, with a fixed price displayed for that meal," which "lead[s] consumers to believe that the orange juice is included as part of the meal."  (Id. ¶ 43.)  During an in-store purchase of a meal with orange juice, the only time a consumer becomes aware of the orange juice surcharge in writing is on the

printed receipt after payment is made. (Id. ¶¶ 44, 45.) The receipt describes the orange juice surcharge as a "Drink Upcharge":



(Id. ¶ 45.)

C.   **National Practices and Complaints**

Online images of McDonald's menu boards from locations throughout the United States establish that the company's disclosure and advertising practices are consistent across the nation. (Id. ¶ 46.) McDonald's "correctly advertises" its breakfast meals to the general public through its corporate website, in-store self-service kiosks, and third-party delivery service providers such as Postmates, DoorDash, and Grubhub. (Id. ¶ 48.)

Various customers have expressed concerns on social media outlets about the advertising practices related to McDonald's orange juice surcharge. (Id. ¶ 49.) A YouTube user complained about McDonald's orange juice surcharge. (Id. ¶ 53.) Multiple X (formerly known as Twitter) users have posted complaints about McDonald's orange juice surcharge. (Id. ¶ 50.) McDonald's provides "general and vague response[s]" to these complaints, and the breakfast meals are still advertised with an orange juice and a fixed price. (Id. ¶ 52.)

D.   **General Advertising Allegations**

McDonald's has "long engaged" in marketing campaigns intended to "lure consumers through 'plant the seed' types of advertising . . ., in an effort to influence the human psyche." (Id. ¶ 54.) McDonald's most recent marketing campaign involves highway billboards that offer "2 for $3.99" with a picture of a McCafe and three breakfast sandwiches. (Id. ¶ 55.) However, a drink is not included as part of the offer. (Id.)

McDonald's also has a history of "phasing out certain breakfast items that long-time patrons frequently ordered with included drinks." (Id. ¶ 56.) Most recently, McDonald's stopped offering a drink as part of its Big Breakfast with Hotcakes after years of offering the meal with a drink included. (Id. ¶ 57.) Despite this, McDonald's continues to advertise the meal on billboards with the slogan, "Mornings, with everything," which suggests that a drink is included as part of the meal offering. (Id.) The advertisement is "intended to lure and deceive long time patrons of the restaurant, who are later required to pay for a separate drink." (Id.)

Unlike other fast-food chains like Chipotle and Subway, McDonald's improperly trains its employees about items for which it has an additional charge, so customers are underinformed at the time of purchase. (Id. ¶ 60.) McDonald's has previously been subject to lawsuits for false advertising for offering combo meals at a cost that differs from the advertised price. (Id. ¶ 61.) A previous matter in the Central District of California, which settled for a lump sum paid to the individual plaintiff, did not deter McDonald's advertising practices or cause McDonald's to correct its advertising practices. (Id. ¶¶ 60-63.)

California's recent adoption of AB 1228 increased wages to $20 per hour for fast food workers at restaurants with more than 60 national establishments under one common brand. (Id. ¶ 64.) In response, McDonald's Chief Executive Officer Chris Kempczinski stated, in part: "[T]here is going to be a wage impact for our California franchisees. I don't think at this point, we can say exactly how much of that is going to work its way through pricing. Certainly, there's going to be some element of that that does need, to be worked through with higher pricing. . . . We believe we're in a better position than our competitors to weather this." (Id.) Without any accountability, McDonald's will "only be emboldened to engage in even more deceptive and misleading advertising campaigns" compared to those that exist today. (Id. ¶ 66.)

The impact of McDonald's actions is "amplified by the current economic climate," in which many consumers "are grappling with rising inflation and food costs." (Id. ¶ 69.) McDonald's pricing strategy also diverts customers away from competitors who are more transparent about pricing. (Id. ¶ 71.)

On January 25, 2024, Meyers reported the foregoing allegations to the FTC with report number 168880801. (Id. ¶ 73.)

### III.   LEGAL STANDARD

**A.    Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court

must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.      Rule 9(b)**

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") imposes a heightened pleading standard where a complaint alleges fraud or mistake.  Under Rule 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee, 236 F.3d 1014, 1018-19).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  Rule 9(b) applies to the claims that are based on alleged fraudulent conduct, even if they don't allege fraud specifically.  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)); Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010).

//

C.  **Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

### IV.  DISCUSSION

Plaintiffs bring four causes of action for: (1) violations of state consumer protection laws; (2) breach of contract and promissory estoppel; (3) intentional and negligent misrepresentation; and (4) unjust enrichment. (See FAC at 1.) Defendants move to dismiss the FAC for failure to state a claim under Rule 12(b)(6). (See Motion at 1.) The Court addresses each of the claims in turn.

A.  **Count One: Violations of State Consumer Protection Laws**

Defendants argue that Plaintiffs fail to plead their consumer protection claims with the particularity required by Rule 9(b) because: (1) the claims are overbroad; (2) the claims fail the reasonable consumer test; and (3) the misrepresentation and omission theories fails. (See id. at 6-20.) The Court addresses each of these arguments in turn.

As a threshold matter, Defendants contend that the consumer protection claims "sound in fraud" and therefore must comply with Rule 9(b)'s heightened pleading standard. (Motion at 6.) Plaintiffs dispute this contention, arguing that Rule 9(b)'s requirements do not "apply to the entire claim if fraud is not an essential element, even if the complaint includes allegations of fraudulent conduct." (Opposition at 5.) Both parties rely on Vess in making their arguments, but the Court finds that Plaintiffs misstate Vess's standard. See Vess, 317 F.3d at 1103-04. The court in Vess found that "[I]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in a complaint that the defendant has engaged in fraudulent conduct." Id. But if "the plaintiff . . . allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud.'" Id. In that instance, Rule 9(b)'s heightened standard applies. Id. (citing Melder v. Morris, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) ("When 1993 Securities Act claims are grounded in fraud rather than negligence . . ., Rule 9(b) applies.")).

Here, Plaintiffs allege a "unified course of fraudulent conduct." See id. Their consumer protection claims are based on allegations that McDonald's "advertising scheme" for its breakfast meal offerings is "carefully designed to deceive consumers throughout the entire ordering process." (FAC ¶¶ 95-97.) Plaintiffs further allege that "McDonald's is well aware

that the aforementioned orange juice advertising practices are unfair and deceptive." (Id. ¶ 99.) Though Plaintiffs contend these allegations are "analogous to the non-fraudulent conduct in Vess," that is not the case. (See Opposition at 5.) "Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." Vess, 317 F.3d at 1105. While Plaintiffs do not use the term "fraud," they do "allege[] facts that would necessarily constitute fraud," including: McDonald's alleged false representation of an orange juice as part of its breakfast meal, which "is intended to mislead consumers"; McDonald's knowledge that the advertising practice is "unfair and deceptive"; reliance on the false representation; and damages. See id. (See FAC ¶¶ 32, 98-101.) As such, the Court finds that Plaintiffs' consumer protection claims are grounded in fraud and that Rule 9(b)'s heightened pleading standard applies.

The Court next addresses Defendants' substantive arguments. Here, Plaintiffs allege violations of each of the fifty states' and the District of Columbia's consumer protection statutes, which protect against "unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising." (FAC ¶ 94.) Defendants argue that the claims are "overbroad" because Plaintiffs cannot allege violations of all consumer protection statutes using the same general elements and factual allegations. (See Motion at 8-13.) Specifically, Defendants contend that Plaintiffs inappropriately "laundry-list[]" the statutes and assume that the statutes share the same elements, thereby failing to properly plead violations of all the statutes. (Id. at 12-13.) The Court agrees.

Defendants identify multiple instances in which Plaintiffs' allegations fail to state a claim under certain states' consumer protection statutes. For example, consumers are not permitted to bring class actions under Alabama's Deceptive Trade Practices Act—only the Alabama Attorney General can bring such a claim. Ala. Code § 8-19-10(f). In fact, because "[c]onsumer protection laws are a creature of the state in which they are fashioned," there are "material differences" in their elements. Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 591 (9th Cir. 20120). Certain statutes (such as California's CLRA), require pre-suit notice before filing an action for damages, while others have scienter or reliance requirements. Id. Some states have shorter statute of limitations requirements—California's relevant statutes have three- or four-year statutes of limitations, meaning that Plaintiff Shariat's claims for breakfast purchases dating back eight years may be, in part, time-barred. See Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) (citing Cal. Civ Code § 1783; Cal. Bus. & Prof. Code § 17208)). Defendants provide examples, but not an exhaustive list, of ways in which Plaintiffs fail to properly plead all elements of the consumer protection claims. The Court declines to independently analyze each element of the more than fifty statutes provided, especially because it appears that class actions or claims are legally barred under certain statutes and Plaintiffs have failed to carefully consider which statutes are appropriate for their action.

Accordingly, the Court **DISMISSES** the claim for violations of state consumer protection laws (Count One) **WITH LEAVE TO AMEND**. Should Plaintiffs file an amended complaint, the Court instructs Plaintiffs to include the elements of each statute they allege Defendants violated and the facts which fulfill those elements—either by separately bringing

causes of actions for each statute or by grouping statutes with similar elements.

B.     **Count Two: Breach of Contract & Promissory Estoppel**

Plaintiffs bring a second claim for both breach of contract and promissory estoppel. (FAC at 30.) First, the Court notes that it is improper for Plaintiffs to bring multiple causes of action in one claim. See Hann v. International Brotherhood of Magicians IBM, 2023 WL 3409049, at *3 (C.D. Cal. Feb. 17, 2023) ("[Plaintiff] must separately state his causes of action instead of grouping them together into one claim."). As such, the Court analyzes the breach of contract and promissory estoppel claims separately.

     **1.    Breach of Contract**

Defendants argue that Plaintiffs' breach of contract claim fails because "[a]dvertisements on menu boards do not constitute offers." (Motion at 20.) In order to establish a breach of contract, a plaintiff must prove: "(1) the existence of a valid contract; (2) plaintiff performed its obligations under the contract; (3) defendant failed to perform its obligations under the contract; and (4) this non-performance resulted in damages to the plaintiff." Sheldon Abend Revocable Trust v. NBC Universal, Inc., 2011 WL 13220378, at *1 (C.D. Cal. June 28, 2011). "The formation of a contract in California requires mutual assent, consisting of offer and acceptance." AMG and Associates, LLC v. AmeriPride Services, Inc., 2016 WL 9275402, at *4 (C.D. Cal. Aug. 29, 2016).

Generally, "an advertisement, circular, price list, quotation or the like is not an offer, even though the terms of suggested bargains may be stated in some detail." Konik v. Cable, 2009 WL 10681970, at *4 (C.D. Cal. Dec. 2, 2009) (internal quotations and citations omitted). However, "certain advertisements have been held to constitute offers where they invite performance of ***a specific act*** without further communication and ***leave nothing for negotiation***." Id. (emphasis in original) (internal quotations and citations omitted). The general test for evaluating whether an offer exists is to "ask whether the advertiser, in clear and positive terms promised performance in exchange for something requested by the advertiser and whether the recipient of the advertisement reasonably might have concluded that by performing the request a contract would be formed." Id. (internal quotations and citations omitted). If the advertisement is "clear, definite, and explicit, and [leaves] nothing open for negotiation," it constitutes a valid offer. See id. at *5.

Here, Plaintiffs allege that McDonald's, "through its advertising, offered breakfast meals with an orange juice pictured at a fixed price." (FAC ¶ 104.) Neither party provides authority to indicate whether menus—especially those depicting images (rather than text) next to prices—constitute offers, nor can the Court locate any such authority from Ninth Circuit or California courts. (See Motion; Opposition.) However, the Court finds that Plaintiffs do not sufficiently allege that McDonald's breakfast meal option on the menu boards presents a "clear, definite, and explicit" offer which leaves "nothing open for negotiation." See Konik, 2009 WL 10681970, at *5. Plaintiffs specifically allege that the drive-through and in-store menu boards include the

following Breakfast Meals Disclosure: "Meals include a hashbrown and a small premium roast coffee. Pick a different drink or side *for an additional charge*. Promotional pricing may be lower than meal pricing." (FAC ¶¶ 21, 42 (emphasis added).) By stating "[p]ick a different side or drink for an additional charge," the Breakfast Meals Disclosure itself indicates that the options on the menu (which are pictured with drinks other than the coffee) are not "clear, definite, and explicit." Terms—namely, the additional charge for drinks or sides—are left open for negotiation. See Konik, 2009 WL 10681970, at *5. The Court takes no position as to whether pictured items next to prices on a menu board can constitute a valid offer for the purposes of contract formation. It finds only that the Breakfast Meals Disclosure, which Plaintiffs describe in the FAC, makes clear that the meal options are not definite or explicit offers.

Accordingly, the Court **DISMISSES** the breach of contract claim (Count Two) **WITH LEAVE TO AMEND**.

**2. Promissory Estoppel**

In the alternative, Plaintiffs bring a claim for promissory estoppel. (FAC ¶ 108 ("Should this Court find that a contract was only formed after the Plaintiffs confirmed the accuracy of their order . . ., Plaintiffs and class members pray this Court finds a contract exists based on the original advertisement of the meal on the menu board, under the equitable doctrine of promissory estoppel.").) However, Plaintiffs' promissory estoppel claim fails for the same reason as their breach of contract claim.

The elements of a promissory estoppel claim are: "(1) a promise *clear and unambiguous* in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." US Ecology, Inc. v. State of California, 129 Cal. App. 4th 887, 901 (2005) (emphasis added). "Cases have characterized promissory estoppel claims as being basically the same as contract claims, but only missing the consideration element." Id. As discussed above, Plaintiffs fail to plead that Defendants made a promise in "clear and unambiguous" terms, because Plaintiffs allege that the menu boards included the Breakfast Meals Disclosure. See id. (FAC ¶¶ 21, 42.)

Accordingly, the Court **DISMISSES** the promissory estoppel claim (Count Two) **WITH LEAVE TO AMEND**.

**C.     Count Three: Intentional & Negligent Misrepresentation**

To state a claim for intentional or negligent misrepresentation, Plaintiffs must allege: "(1) a misrepresentation of fact; (2) knowledge that the representation was false (intentional misrepresentation); or without reasonable grounds for believing it to be true (negligent misrepresentation); (3) with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damages." Angiano v. Anheuser-Busch InBev Worlwide, Inc., 532 F. Supp. 3d 911, 918 (C.D. Cal. 2021).

Defendants argue that Plaintiffs' misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b) and that the claim fails to "identify the role of each defendant in the alleged fraudulent scheme." (Motion at 24.) Plaintiffs respond that "it is premature and unnecessary . . . to pinpoint the specific role of each Defendant." (Opposition at 21.) Plaintiffs do not dispute that their misrepresentation claim is subject to Rule 9(b)'s pleading standard.

"To satisfy Rule 9(b), a fraud suit against differently situated defendants must identify the role of each defendant in the alleged fraudulent scheme." United States e rel. Anita Silingo v. WellPoint, Inc., 904 F.3d 667, 677 (9th Cir. 2018). Here, Plaintiffs bring their four causes of action against both McDonald's USA LLC and McDonald's Corporation. (See FAC.) Nowhere in the FAC do Plaintiffs allege facts related to a relationship between the two Defendants or either Defendant's role in the purported fraudulent scheme. (See generally FAC.) Unless Defendants "had the exact same role in a fraud," which Plaintiffs do not allege, Defendants cannot be "lump[ed]" together. WellPoint, Inc., 904 F.3d at 677. "More is required to plead the circumstances of a fraud with particularity." Id.

Though Plaintiffs argue that they need not pinpoint the "specific role of each Defendant" in their FAC, the cases they rely on do not require Rule 9(b) heightened pleading. (See Opposition at 21-22.) For instance, Gillibeau v. City of Richmond is a Section 1983 civil rights action which contains no mention of Rule 9(b) pleading or fraud. See generally 417 F.2d 426 (9th Cir. 1969). As such, the Court finds that Plaintiffs do not sufficiently allege the role of each Defendant in the purported fraudulent scheme.

Accordingly, the Court **DISMISSES** the intentional and negligent misrepresentation claim (Count Three) **WITH LEAVE TO AMEND**.

D.   **Count Four: Unjust Enrichment**

Plaintiffs' fourth cause of action is labeled as one for "unjust enrichment." (FAC at 32.) "Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." Rutherford Holdings, LLC v. Plaza Del Ray, 223 Cal. App. 4th 221, 231 (2014). "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with restitution." Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762 (9th Cir. 2015) (internal quotations and citations omitted). However, "[w]hen a plaintiff alleges unjust enrichment, a court *may construe the cause of action as a quasi-contract claim* seeking restitution." Id. (internal quotations and citations omitted) (emphasis added).

"The elements of a claim of quasi-contract or unjust enrichment are (1) defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." MH Pillars Ltd.v. Realini, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citing Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008)). Here, Plaintiffs allege that they are entitled to relief because Defendants "deceptively misl[ed] consumers" through their advertising, Plaintiffs purchased the breakfast meals as a result, and Defendants were "unjustly enriched." (See FAC ¶¶ 32, 47, 120-

121.) These allegations are "sufficient to state a quasi-contract cause of action." <u>Astiana</u>, 783 F.3d at 762.

In addition, Defendants argue that unjust enrichment "applies only in the absence of an adequate remedy at law." (Motion at 25.) <u>See</u> <u>Overton v. Bird Brain, Inc.</u>, 2012 WL 909295, at *7 (C.D. Cal. Mar. 15, 2012) ("Because this Court has found that Plaintiff has adequately pled claims under the CLRA, UCL, and FAL, there is an adequate legal remedy and thus no need for an unjust enrichment claim."). Here, however, the Court has dismissed Plaintiffs' other causes of action. In addition, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). <u>See</u> <u>Astiana</u>, 783 F.3d at 765-66.

Accordingly, the Court **DENIES** the Motion as to the unjust enrichment claim (Count Four).

## V.   CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1. Defendants' Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. Count One (state consumer protection violations) is **DISMISSED WITH LEAVE TO AMEND**.

3. Count Two (breach of contract and promissory estoppel) is **DISMISSED WITH LEAVE TO AMEND**.

4. Count Three (intentional and negligent misrepresentation) is **DISMISSED WITH LEAVE TO AMEND**.

5. The Motion as to Count Four (unjust enrichment) is **DENIED**.

6. Plaintiffs may file an amended complaint no later than **April 29, 2024**.

7. The April 22, 2024 hearing is **VACATED**.

**IT IS SO ORDERED.**